# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHAEL ALLEN SCHRANK,

      **Plaintiff,**

      **v.**                                                               Case No. 19-CV-763

ANDREW M. SAUL,
**Commissioner of Social Security,**

      **Defendant.**

---

## DECISION AND ORDER

---

Michael Allen Schrank seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is affirmed.

## BACKGROUND

Schrank filed an application for a period of disability and disability insurance benefits alleging disability beginning on February 28, 2008 due to sleep apnea, asthma, and high blood pressure. (Tr. 143.) Schrank's application was denied initially and upon reconsideration. (Tr. 13.) Schrank filed a request for a hearing and a hearing was held before Administrative Law Judge ("ALJ") Robert L. Bartelt on February 22, 2010. (Tr. 22–57.) Schrank testified at the hearing, as did his father, John Schrank, and vocational expert Robert Newman. (Tr. 22.) In a written decision issued June 23, 2010, ALJ Bartelt found that Schrank had the severe impairments of sleep apnea and obesity. (Tr. 16.) ALJ Bartelt determined, however, that Schrank was not disabled because he had the residual functional capacity ("RFC") to perform

the requirements of at least a wide range of unskilled work at any exertional level that would not involve exposure to hazards. (Tr. 17–18.) Schrank appealed this decision to the U.S. District Court for the Eastern District of Wisconsin. The district court reversed the ALJ's decision, finding that while both Schrank and Schrank's father testified as to Schrank's problems with excessive daytime sleepiness or somnolence, the ALJ completely ignored this testimony in his decision. (Tr. 432–33.) The Appeals Council remanded the case to ALJ Bartelt with instructions to hold a new hearing and issue a new decision. (Tr. 412–13.)

A second hearing was held before ALJ Bartelt on October 1, 2012. (Tr. 384–409.) At this hearing, Schrank testified, as did vocational expert Margaret Ford. (Tr. 384.) On December 28, 2012, ALJ Bartelt again denied Schrank's disability claim. (Tr. 443–49.) This time, ALJ Bartelt addressed Schrank's testimony that he has difficulty staying awake during the day as follows:

> The undersigned also notes the claimant's previous testimony that he continues to drive all over town but takes another person along for "safety purposes." The undersigned finds it patently incredible that the claimant truly falls asleep all the time when doing activities like driving and has yet to have a serious accident. The undersigned believes it is likely that the claimant's non-compliance leaves him somewhat sleepy and he may very well fall asleep if left in a quiet room. However, if engaged in work or other activities, the claimant should be able to remain awake, even if he continues to be non-compliant in using CPAP or BIPAP. Clearly, if he follows his doctor's advice even this limitation is likely to disappear.

(Tr. 447.) Schrank filed a written exception to the Appeals Council, who again remanded the case to an ALJ to resolve multiple issues. (Tr. 456–59.) The Appeals Council found that while ALJ Bartelt now explained that he believed Schrank's allegations of excessive daytime somnolence were "incredible" and noted that he was non-compliant with treatment, the ALJ failed to consider Schrank's testimony that he did not use the CPAP mask because he felt like he could not breathe when it was on his face. (Tr. 456.) The Appeals Council further found

the ALJ failed to consider Schrank's testimony that he was fired from two jobs for falling asleep on duty, failed to consider the fact that surgery Schrank underwent was unsuccessful, failed to address Schrank's father's testimony, and failed to consider the factors listed in Social Security Ruling ("SSR") 96-7p. The Appeals Council also found the ALJ failed to properly evaluate Schrank's asthma. (Tr. 458.) Because the case had been previously remanded to ALJ Bartelt, the Appeals Council directed that the case be assigned to a different ALJ on remand. (Tr. 459.)

A third hearing was held on June 10, 2015 before ALJ Margaret O'Grady. (Tr. 358–83.) Schrank again testified, as did vocational expert Catherine Anderson. (Tr. 358.) Schrank's counsel, Michael Fleming, requested an opportunity to testify as to his observations of Schrank. (Tr. 377.) While ALJ O'Grady stated that it would be inappropriate for counsel to testify on his client's behalf, she ultimately allowed it. (Tr. 378.) Attorney Fleming testified that he has had Schrank in his office ten to twelve times over the course of the Social Security appeal and each time their meetings were interrupted with Schrank falling asleep. (*Id.*)

In a written decision issued September 2, 2015, ALJ O'Grady found that Schrank had the severe impairments of obstructive sleep apnea, obesity, and asthma. (Tr. 346.) She further found that Schrank did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 347.) ALJ O'Grady found that Schrank had the RFC to perform medium work with the following non-exertional limitations: no climbing; no working at heights or with hazards; no exposure to concentrated fumes or other environmental irritants; only occasional stooping or crouching; and limited to simple, routine, repetitive, and non-complex work. (*Id.*) While ALJ O'Grady found that Schrank could not perform any of his

past relevant work, she found that given Schrank's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 350.) As such, the ALJ found that Schrank was not disabled from his alleged onset date until the date of the decision. (Tr. 351.) This time, the Appeals Council denied Schrank's request for review, making ALJ O'Grady's decision the Commissioner's final decision for purposes of this Court's review. (Tr. 1–7.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered

4

by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2.    Application to this Case

The parties do not dispute that Schrank suffers from obstructive sleep apnea and that his obstructive sleep apnea causes daytime somnolence. The sole issue before me is whether the ALJ erred in discounting Schrank's allegations as to the intensity and persistence of the somnolence.

In evaluating the credibility of a claimant's statements, the ALJ must comply with SSR 96-7p.[1] *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). SSR 96-7p requires the ALJ to consider a list of non-exhaustive factors, such as the claimant's daily activities and the medication, treatment, or other measures the claimant uses to alleviate his symptoms. The reasons for the ALJ's credibility finding "must be grounded in the evidence and articulated in the determination or decision . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Schrank testified that he falls asleep randomly one to three times a day. (Tr. 371.) ALJ O'Grady relies on four main factors in finding Schrank's statements regarding the extent of his daytime somnolence not entirely credible:

> [T]here are several factors that lead the undersigned to find the claimant is less than fully credible regarding his somnolence. First, shortly after the claimant stopped working, his doctor stated "He will fall asleep very easily if he is in a quiet position and not doing much" (Exhibit 6F p. 2). Second, the claimant has

---

[1] Since the ALJ's decision in this case, SSR 96-7p has been superseded by SSR 16-3p.

overstated his symptoms by testifying that he falls asleep while driving. Third, it appears the claimant may have switched sleep doctors because his first doctor would not support his claim for disability (Exhibit 9F p.1). Finally, the claimant's lack of consistent treatment and his failure to try every aspect of treatment to successfully use a CPAP or BiPAP mask (desensitization therapy or an alternative mask) lead the undersigned to the conclusion his symptoms are not as bad as he alleges.

(Tr. 349.) Schrank contests each of these reasons for finding him less than fully credible.

As to the first reason, the ALJ referred to a statement of Schrank's treating physician, Dr. Andrew Brayer, that Schrank "will fall asleep very easily if he is in a quiet position and not doing much." (Tr. 260, 349.) ALJ O'Grady relied on Dr. Brayer's statement to find that Schrank was really only at risk of falling asleep without warning if he was inactive. (Tr. 349) ("As the claimant indicated initially to his doctor if he can avoid being in a quiet position not doing much he can likely remain awake."). Beyond stating that the ALJ's decision was "arbitrary and capricious" (Pl.'s Br. at 12, Docket # 13), Schrank does not indicate how the ALJ erred in relying on this statement by Dr. Brayer.

The ALJ also noted that while Schrank's father initially testified that Schrank would fall asleep while doing things like changing the oil in the car (Tr. 489), upon further questioning, his father clarified that "sometimes if he's attentive enough he might not but he might doze a little bit or nod off a little bit and I'll have to holler at him, you know, kind of wake him up. But if he stands still for too long of a time he'll, he'll just doze right off." (Tr. 489–90.) This corroborates the ALJ's finding that Schrank falls asleep while inactive. The ALJ also considered the fact that Schrank's counsel testified that Schrank falls asleep during consultations. (Tr. 349.) She found, however, that this would be a typical situation where Schrank would be in a "quiet position and not doing much." (*Id.*) In response, Schrank argues that his limitation to "simple, routine, repetitive, non-complex work is tantamount . . . to

being in a non-work environment such as engaging in a consultation in a lawyer's office."

(Pl.'s Reply Br. at 3, Docket # 20). Schrank's argument, however, is overbroad. While there

likely are simple, routine, non-complex jobs tantamount to sitting in a consultation with a

lawyer, Schrank has not shown that the jobs the ALJ found that he could perform (such as

office clerk) involve him being in a "quiet position" where he is "not doing much." Shrank

offers no evidence that his other limitations would restrict him to only quiet positions where

he would fall asleep.

As to the ALJ's finding that Schrank overstated his symptoms by testifying that he fell

asleep while driving (Tr. 349), Schrank argues that the ALJ mischaracterized Schrank and his

father's testimony; stating that both meant that Schrank only "nods off" while driving longer

distances and thus only drives short distances and only with someone in the car with him.

(Pl.'s Br. at 13.) Schrank also argues that he did not hold a commercial driver's license at the

time of his hearing before ALJ Bartelt. (*Id.* at 16–17.) Shrank's arguments are not supported

by the record. The ALJ found that Schrank continued to have a valid driver's license and had

a commercial driver's license at the time of his hearing before ALJ Bartelt. (Tr. 348.) This was

not error as Schrank specifically testified before ALJ Bartelt that he continued to hold a

commercial driver's license. (Tr. 40–41.) The ALJ further found that while Schrank's father

initially testified that Schrank would sometimes fall asleep while driving, when further

questioned, he clarified that Schrank did not "literally" fall asleep while driving. (*Id.*) And

Schrank also testified before ALJ Bartelt that if he had to drive over a mile from his house, he

takes someone with him "[t]o make sure [he] [doesn't] nod off." (Tr. 39.) Finally, the ALJ

reasoned that it was not believable that Schrank could drive with that level of somnolence

over a period of seven years and never have an accident from falling asleep at the wheel. (Tr.

348.) The ALJ also believed that Schrank would not continue to engage in such dangerous behavior all of these years. (Tr. 348–49.) None of the conclusions ALJ O'Grady made are unreasonable or unsupported by the record.

Third, the ALJ found Schrank's allegations not credible because she found that Schrank may have switched sleep doctors when his first doctor would not support his claim for disability. (Tr. 349.) The ALJ relied on a December 2009 statement made by Dr. Brayer, Schrank's family practice doctor, in support of her conclusion:

> [Schrank] also said he needs a second opinion on his sleep apnea. He has been currently following for disability and the sleep apnea specialist that he has seen was not uncomfortable [sic] I guess or thought he was not able to say that he would work at this point. His insurance did refer him to another sleep apnea specialist that he will be seeing.

(Tr. 288.) During the relevant time period, Schrank primarily treated with three doctors—Dr. Brayer; Dr. Don Harden, a sleep medicine doctor; and Dr. Christopher Long, an otolaryngologist. Schrank argues that ALJ O'Grady's determination was erroneous because Schrank's doctors, specifically Dr. Harden and Dr. Long, were working in concert regarding his treatment. (Pl.'s Reply Br. at 2, Docket # 20.) But the statement in question comes from Dr. Brayer and regards his independent assessment of Schrank's situation. (Tr. 288.) Dr. Brayer recounted Schrank's statement that he needed a second opinion on his sleep apnea and then offered his own personal observations that Schrank was applying for disability and the sleep doctor he was seeing was uncomfortable rendering an opinion on his ability to work. (*Id.*) It was not unreasonable for the ALJ to rely on an observation made by Schrank's own treating doctor.

Furthermore, the record supports Dr. Brayer's statement that Schrank stopped treating with Dr. Harden after he refused to opine as to Schrank's disability. Schrank began treating

with Dr. Harden, upon Dr. Brayer's referral, in early 2006. (Tr. 214.) Between 2006 and 2008, Schrank underwent several sleep studies with Dr. Harden (Tr. 202–03, 214–15, 234–35), as well as treating with him in the office (Tr. 198–99, 200–01, 212–13, 232–33). During a sleep study performed on September 19, 2007, Dr. Harden noted that a "full night titration" was "largely successful at improving sleep architecture and relieving the majority of events"; thus, the possible "extended use of CPAP at home will result in longer sleep latencies." (Tr. 202.) During a follow-up appointment on September 26, 2007, Dr. Harden noted that Schrank was "visibly falling asleep in my office" (Tr. 200); however, he also noted that Schrank had not worn the CPAP device that he was provided prior to the sleep study (Tr. 201). After Dr. Brayer's statement in December 2009 regarding Schrank seeking a "second opinion," while Dr. Harden continued to interpret the results of subsequent sleep studies (Tr. 313–14, 643–44), Schrank no longer treated with Dr. Harden in the office. For these reasons, the ALJ did not draw an unreasonable conclusion from the record evidence.

Finally, the ALJ found that Schrank's lack of consistent treatment and his failure to try every aspect of treatment to successfully use a CPAP or BiPAP mask (i.e., desensitization therapy or an alternative mask) indicated that his symptoms were not as bad as alleged. (Tr. 349.) The record is clear that Schrank had issues tolerating the CPAP mask. (Tr. 198, 232, 260, 291, 313, 623, 651, 655, 657, 659, 706, 721, 731.) But the ALJ does not ignore this evidence. Rather, she notes that despite his difficulty tolerating the CPAP mask, the records indicated that Schrank "refus[ed] desensitization therapy" to help him adjust to the mask (Tr. 349, citing Tr. 659) and apparently never followed up on Dr. Long's suggestion to work with a company to have a nasal mask fitting (Tr. 349, citing Tr. 651). Further supporting the ALJ's conclusion is the record evidence indicating that Schrank *did* tolerate the BiPAP "very well"

(Tr. 313–14) and despite this, he was "poorly motivated to use [the BiPAP]" (Tr. 658). In fact, Dr. Harden noted after a sleep study conducted in February 2010 that Schrank's apnea resolved with use of the BiPAP. (Tr. 314.) Considering Schrank's reticence to use the BiPAP machine despite tolerating it well and his apnea greatly improving with its use (Tr. 314, 654), the ALJ's finding that Schrank's symptoms are not as severe as alleged is patently reasonable.

## CONCLUSION

Schrank challenges the ALJ's determination that his testimony regarding the severity of his daytime somnolence was not entirely credible. However, "[i]t is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong' and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) (internal citation omitted). In this case, the ALJ properly supported her rationale for the adverse credibility determination and the record supports her explanation. For these reasons, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of March, 2020.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge